# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHEN M. ROMANO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 20 C 7268 ) |
| FIRST MIDWEST BANCORP, INC.; FIRST MIDWEST BANK; and PETER HALEAS, | ) Judge Joan H. Lefkow ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Plaintiff Stephen Romano brought an action against defendants First Midwest Bancorp, Inc., First Midwest Bank, and Peter Haleas to recover unpaid employment compensation, raising claims under the Illinois Wage Payment and Collection Act, and for breach of contract, promissory estoppel, and unjust enrichment.[1] First Midwest Bancorp, Inc. and First Midwest Bank (collectively First Midwest Bank) moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) to dismiss the unjust enrichment claim. The motion is denied.

## BACKGROUND[2]

Todd Jones, president of the retail mortgage production division at Bridgeview Bank Mortgage Company, LLC (BBMC), recruited Romano to join BBMC's consumer mortgage division. (Dkt. 11 at 5, ¶¶24–25.) After "weeks of discussion," Romano agreed to join BBMC as an executive vice president. (*Id.* ¶27.) In late January 2014, Jones emailed Romano an offer

---

[1] This court has diversity jurisdiction over this action under 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391.

[2] The factual basis for this motion under Rule 12(c) is based on the pleadings, taking as true all well-pleaded facts and drawing all reasonable inferences in the non-movant's favor. *See infra* Legal Standard.

1

letter, calling it a "Place holder, until full contact." (*Id.* ¶¶28–29.) Romano requested revisions to the letter, and BBMC sent him a revised letter. (*Id.* at 5–6, ¶30.)

The offer letter, titled "Offer of Employment for Steve Romano," detailed the "offer to start as Executive Vice President." (Dkt. 12-1.) It laid out a "Compensation Plan" of $20,000 per month for Romano's first four months, after which his compensation would convert to a base salary of $120,000, "plus incentives." (*Id.*) It also outlined additional compensation based on a percentage of the pre-tax profits of Jones' branches, along with relocation and cell phone expense reimbursement. (*Id.*) The offer letter included a disclaimer that stated: "This document is not to be construed as an employment contract. [BBMC] is an employment at will employer. All employment with [BBMC] is contingent upon the successful completion of reference/background verification." (*Id.*) On February 9, 2014, Romano signed the offer letter. (*Id.* at 6, ¶31.)[3]

Romano began work at BBMC on February 10, 2014. (Dkt. 11 at 6, ¶32.) He started before finalizing an employment agreement because he trusted that Jones would memorialize the terms that they had discussed. (*Id.*) Jones had, in fact, emailed the Bridgeview Bank CEO Jeff Gennarelli on February 9 stating that he still owed Romano a contract on top of the signed offer letter. (*Id.* ¶¶33–34.) As it turned out, Romano received a draft employment agreement on his first day. (*Id.* ¶35.)

The following day, in an email to Jones, Romano expressed his disappointment in the draft's terms and requested a "lengthy list" of corrections, including a new severance payment term and removal of a non-compete term. (*Id.* at 6–7, ¶¶37, 39–40.)

---

[3] Although Romano alleged that he signed the letter on February 9, 2014 (dkt. 11 at 6, ¶ 31), the offer letter is dated "January 24, 2014" and Romano's signature on the letter is also dated "1/24/14." No party explains the discrepancy, but it does not appear to be material.

On February 12, Romano again emailed Jones, repeating his requests and adding an additional request for a tiered percent bonus calculation. (*Id*.) By February 16, Jones sent Romano a revised employment agreement (dkts. 11-1, 11-2) that incorporated Romano's requested revisions and reflected the terms to which they had agreed (dkt. 11 at 7, ¶¶42–43), including a severance provision in the event of a termination without cause (*id.* ¶44; dkt. 12-2 at 5.) Romano never signed the employment agreement, but he and Bridgeview Bank operated as though it governed their relationship. (Dkt. 11 at 8, ¶¶48–49.)

Later, in October 2014, Romano and William Sullivan, Bridgeview Bank's director of recruiting (*id.* at 5, ¶30), entered into an "Override Compensation" agreement that adjusted Romano's compensation (*id.* at 8, ¶50).

About four years later, in 2018, Romano assisted in a deal to sell bemortgage llc, a mortgage firm that was formerly a division of Bridgeview Bank, to Cross Country Mortgage. (*Id.* ¶55.) Around the same time, Bridgeview Bank was negotiating with Synergy One Lending, Inc. for the sale of BBMC. (*Id.* at 9, ¶57.) To facilitate the bemortgage deal, Romano waived a $1 million payment owed to him as the managing member of bemortgage under the belief that Bridgeview Bank would include him in the sale of BBMC. (*Id.* ¶56.) But Haleas, Bridgeview Bank's chairman, and Gennarelli cut Romano out of the BBMC sale to Synergy One, only after Romano was induced to waive the $1 million payment. (*Id.* at 10, ¶59.)

In October 2018, Romano learned that he was being terminated, with his final day being December 31, 2018. (*Id.* ¶61.) In November 2018, Synergy acquired BBMC. (*Id.* ¶12.) First Midwest Bank acquired Bridgeview Bank the following month. (*Id.* ¶¶4, 13.)

Romano filed a complaint against First Midwest Bank, seeking more than $1.5 million from First Midwest Bank and Haleas based on unpaid portions of his October–December 2018

3

bonuses and a severance payment amounting to "seven basis points on the Jones' Group's average funded volume for the six months following his termination." (*Id.* at 10–11, ¶¶62–70.) Romano brought four claims: count I raises a violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/2; count II is for breach of contract based on the override agreement and the severance provision in his employment agreement; and counts III and IV, for promissory estoppel and unjust enrichment respectively, are pleaded as alternative theories of recovery to the breach of contract claim. (*Id.* at 11–14.)

First Midwest Bank answered the complaint, generally denying the alleged circumstances surrounding the offer letter but admitting that Romano signed it. (Dkt. 12 at 6, ¶31.) Regarding the employment agreement, it admitted to Romano's allegation that First Midwest Bank does not believe that the offer letter "is enforceable or that Romano is entitled to any severance payment." (*Id.* at 12–13, ¶66.) The answer also claimed that it was "undisputed that the Offer Letter is an enforceable agreement between the parties." (*Id.* at 19, ¶19.)

## **LEGAL STANDARD**

First Midwest Bank moved for judgment on the pleadings, seeking to dismiss the unjust enrichment claim in count IV. (Dkt. 14.) Under Rule 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. A Rule 12(c) motion is subject to the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Landmark Am. Ins. Co.* v. *Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). Under that standard, this court accepts all well-pleaded allegations as true and draws all reasonable inferences in the light most favorable to the non-moving party. *See Forseth* v. *Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). The motion should not be granted unless it appears beyond doubt that the non-movant can

4

prove no set of facts that would be sufficient to support its claim for relief. *See Scottsdale Ins. Co.* v. *Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

## ANALYSIS

In its motion for judgment on the pleadings, First Midwest Bank seeks to dismiss the unjust enrichment claim based on its admission that Romano signed the offer letter and assertion that the offer letter is an enforceable agreement regarding Romano's employment compensation. (Dkt. 15 at 6.) First Midwest Bank argues that the unjust enrichment claim, pleaded as an alternative theory of recovery to breach of contract, is therefore doomed because the offer letter is an express contract that governs the parties' relationship. (*Id.*)

Unjust enrichment is based on a contract implied in law, requiring the plaintiff to show "that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment." *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).[4] Because unjust enrichment must imply a contract, it has no application where an express contract governs the parties' relationship, unless the claim falls outside the general subject matter of that contract. *Id*. Illinois courts construe the subject matter of a contract broadly. *See Stevens* v. *Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015), *aff'd in part*, 830 F.3d 735 (7th Cir. 2016) (citing *Indus. Lift Truck Serv. Corp.* v. *Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982)). Nonetheless, unjust enrichment may be pleaded in the alternative to a breach of contract claim. *See, e.g.*, *Cohen* v. *Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *Karimi* v. *401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1285 (Ill. App. Ct. 2011).

---

[4] Both parties apply Illinois law, which also is the law of the forum state. *See Landmark Am. Ins. Co.* v. *Hilger*, 838 F.3d 821, 824 (7th Cir. 2016).

That Romano signed the offer letter does not make unjust enrichment unavailable. Romano's breach of contract claim is predicated on the override compensation agreement and a severance provision in the employment agreement, not any term in the offer letter. (Dkt. 11 at 13.) The unjust enrichment claim is pleaded in the alternative to the enforceability of those two agreements. (*Id.* at 14.) At this stage, First Midwest Bank may not ignore the alleged existence and enforceability of the override compensation agreement and employment agreement by admitting that Romano signed the offer letter, thus making the offer letter the default agreement governing Romano's compensation and rendering unjust enrichment unavailable.

Moreover, it does not necessarily follow that because Romano signed the offer letter, it is now "undisputed that the Offer Letter is an enforceable agreement between the parties." (Dkt. 12 at 19, ¶9.) Considering the language of the offer letter, its purpose, and the alleged circumstances surrounding it, the signed offer letter does not demonstrate that it was intended to be an enforceable contract, let alone had any relevance once the employment agreement was in place or the superseding override compensation agreement was entered. *See Acad. Chi. Publishers* v. *Cheever*, 578 N.E.2d 981, 984 (Ill. 1991) (contract must demonstrate parties' common understanding of essential terms to be enforceable).

To start, the offer letter resembles a non-binding letter of intent. Such letters are common in business dealings and "are not necessarily enforceable unless the parties intend them to be contractually binding." *Quake Const., Inc.* v. *Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). To evaluate whether such a letter was intended to be enforceable, courts may consider whether "the type of agreement involved is one usually put into writing," "contains many or few details," "involves a large or small amount of money," "requires a formal writing for the full expression of the covenants, and . . . the negotiations indicated that a formal written document was

contemplated at the completion of the negotiations," among other factors. *Id.*; *accord Empro Mfg. Co.* v. *Ball-Co Mfg. Co., Inc.,* 870 F.2d 423, 426 (7th Cir. 1989) ("Illinois . . . allows parties to approach agreement in stages"); *Trendmasters, Inc.* v. *Walgreen Co.*, No. 95 C 5379, 1996 WL 422273, at *4 (N.D. Ill. July 24, 1996) (offer and acceptance letter signified a non-binding "agreement to agree").

Consideration of those factors here bolsters the conclusion that the offer letter was not intended to be enforceable. The complaint described negotiations between Jones and Romano, prior to Romano's start, that confirm their intentions that the offer letter was a "[p]lace holder, until full contract" was reached while they hammered out the details. (Dkt. 11 at 5–6, ¶¶28–31.) The complaint went on to describe on-going negotiations once Romano started at BBMC, resulting in a final employment agreement being reached on February 16, 2014, one week after his start. (*Id.* at 6–7, ¶41.)

Further, the offer letter's disclaimer that it "not . . . be construed as an employment contract" (dkt. 12-1 at 2) is consistent with the offer letter being a "[p]lace holder" (dkt. 11 at 5, ¶29) until the parties entered into a final version rather than an enforceable contract that governed Romano's compensation. (Dkt. 11 at 7, ¶¶39–41.) First Midwest Bank asserts without supporting authority that Romano's reliance on this disclaimer as evidence that the offer letter is unenforceable is "wrong and disingenuous" because "'employment contract' is a term of art" and such a disclaimer is commonly used to distinguish between contract employment relationships and at-will employment relationships. (Dkt. 22 at 3 n.2.) Although that point is forfeited for being underdeveloped and raised in a footnote in a reply, *see Narducci* v. *Moore*, 572 F.3d 313, 324 (7th Cir. 2009), First Midwest Bank's interpretation of the disclaimer would at most create ambiguity. But that is insufficient to conclusively show, at this stage, that the offer letter is an

enforceable agreement, rendering unjust enrichment unavailable. *See Quake Const., Inc.*, 565 N.E.2d at 994.

## **CONCLUSION AND ORDER**

First Midwest Bank's motion for judgment on the pleadings to dismiss count IV for unjust enrichment (dkt. 14) is denied.

Date: July 1, 2021

_____
U.S. District Judge Joan H. Lefkow